## Case No. 1,510.

### BLANCHARD v. ELDRIDGE.

[1 Wall. Jr. 337; 2 Robb. Pat. Cas. 737.][1]

Circuit Court, E. D. Pennsylvania. April Sessions, 1849.

ASSIGNMENT OF PATENT RIGHT—PARTIES TO SUE.

*Where a transfer of certain specified privileges, part of larger privileges secured by patent right, does not confer a legal title to the whole, or to an undivided portion of the right, nor grant the entire or exclusive right within a specified part of the United States, a suit for an infringement of one of the privileges transferred, is properly brought at law, in the name of the original holder. For example: B. having a patent for turning irregular forms generally, grants to C. the full and exclusive license, right and permission, to use it for turning shoe lasts. D. having infringed the patent by turning shoe lasts, it was held—that suit for the infringement was properly brought at law in B.'s name.*

[Cited in Gayler v. Wilder, 10 How. (51 U. S.) 477; Adams v. Burks, 17 Wall. (84 U. S.) 458; Wilson v. Chickering, 14 Fed. 918; Hewitt v. Pennsylvania Steel Co., 24 Fed. 369; Dick v. Struthers, 25 Fed. 104.]

[See Suydam v. Day, Case No. 13,654; Goodyear v. Bishop, Id. 5,558; Grover & Baker Sewing Mach. Co. v. Sloat, Id. 5,846; Bogart v. Hinds, 25 Fed. 484.]

At law. Thomas Blanchard had brought a suit, in his own name, at law, and recovered damages for an infringement of a patent he had obtained for turning every kind of irregular forms. [Defendant moves for a new trial. Denied.]

In the course of the trial, the defendant was allowed to show, that prior to the bringing of the suit, Blanchard had assigned to one Carter, "the full and exclusive license, right and permission to have, hold, use and enjoy Blanchard's patent for turning irregular forms, &c., so far as said improvement is or may be used for turning shoe lasts, boot and shoe trees and hat blocks, and also for turning spokes for wheels of all kinds of carriage wheels, and all other articles that form any part in the construction of carriages. To have and to hold the said right and license exclusive of all others, except such persons as have received grants or licenses before the date hereof," &c. The infringement proved on the trial was, that of making shoe lasts, that is to say, an infringement of one of the rights and interests granted exclusively to Carter.

Mr. Hirst, for defendant, having moved for a new trial, relied, among other reasons for it, upon the facts of this transfer to Carter; his argument being, that as Carter was the "party injured," and had the "exclusive right," he was the only person entitled to an action; and that the plaintiff, having parted

[1] [Reported by John William Wallace, Esq.]

with all right to use the machine for the purpose of making lasts, &c., over the whole United States, could not support an action for the infringement. The patent law (Act July 4, 1836, § 11; 5 Stat. 121), it is requisite here to state, enacts, "that every patent shall be assignable in law either as to the whole interest or any undivided part thereof, &c., which assignment, and also every grant and conveyance of the exclusive right under any patent to make, use, and to grant to others to make and use, the thing patented within and throughout any specified part or portion of the United States, shall be," &c., and makes no other provision about assignments. Id. § 14. And also that the act requires the action for an infringement to be "brought in the name or names of the person or persons interested, whether as patentee, assignees, or as grantees, of the exclusive right within and throughout a specified part of the United States."

Mr. F. W. Hubbell and Mr. Saunders Lewis, cited a MS. report of a recent decision in the New York circuit, upon this identical assignment, in which it was held by Judge Nelson, that suit was properly brought in Blanchard's name.

GRIER, Circuit Justice. The point here raised by the defendant's counsel is not without its difficulty, and the force of his argument cannot be evaded if his assumption be true, that this deed transfers the legal title to Carter of that portion of the patent, which it purports to vest in him. But if it does not so operate, it cannot be noticed in a court of law and cannot affect the case.

As the grants of the crown were, at common law, construed with the greatest strictness, the privileges granted by a patent for a monopoly, would probably not have been treated as capable of assignment, unless made so by the letter of the grant. Since the statute 21 Jac. I. c. 3, § 5, patents for useful inventions (notwithstanding the statute itself mentions the "inventor" only,) have always granted the privilege or monopoly to the inventor, his executor, administrator and assigns. These monopolies are, therefore, assignable as other personal chattels, by force of the grant which creates them.

As a chattel also, it might be held by two or more joint owners: Hence any undivided portion or interest in the whole as an unity might be assigned, and if the original grantee died, such assignees might join in an action for an infringement of their right. Boulton v. Bull, 2 H. Bl. 463. "But the patent right itself was insusceptible of local subdivision." Whittemore v. Cutter [Case No. 17,-600]. As a privilege or monopoly, it was an entire thing, indivisible, and incapable of apportionment. Brooks v. Byam [Id. 1,948].

But the act of congress of 1836 [5 Stat. 121, § 11] has regulated the assignment of patents. The eleventh section provides, that a patent shall be assignable: 1st. As to the

whole interest. 2d. As to any undivided part thereof, and 3d. An exclusive right may be granted throughout any specified part or portion of the United States. The fourteenth section requires the action for an infringement of the patent, to be brought "in the name or names of the person or persons interested, whether as patentee, assignees, or as grantees of the exclusive right within and throughout a specified part of the United States." The word "assignees," in this section, must be construed by reference to the eleventh section, already referred to, which defines in what way a patent may be assigned—to wit: either the whole or any undivided portion of the whole. This statute also renders the monopoly capable of subdivision in the category of its locality, but in no other way. The patentee is not allowed to carve out his monopoly, which is an unity, into a hundred or more, all acting in the same place, and liable to come into conflict. The grant to Carter by the deed under consideration, is not of the whole monopoly, nor of any undivided portion of the whole, and though for an "exclusive right," it is not exclusive of all others within a certain district, or specified part of the United States: on the contrary it is an exclusive right to use the machine for a specified purpose. A machine for turning irregular figures may be used for numberless purposes. If the patentee or his assignees can assign to A. an exclusive right to use the machine for making shoe lasts, to B. for turning spokes, to C. for axe handles, and so on to the end of the alphabet, then may he, out of his one monopoly carve out a thousand others, each subdivision, like a polypus, being itself a several monopoly, and having a separate existence in the same place. What endless perplexity and confusion must necessarily arise from the establishment of such a doctrine. Suppose the monopoly granted by this patent parcelled out to some twenty submonopolists, with an exclusive right to each to use his machine for certain purposes, in any given place: what remedy could A. have against B. for an infringement of his special privilege? The patentee or grantor, might restrain his grantee of a machine for a special use, by a covenant; but as between the several grantees no action could lie, although they alone might suffer from a breach of the covenant.

But it is sufficient for purposes of the present inquiry, that the act of congress has not given a legal sanction to such transfers or assignments, nor subjected even a pirate of the machine to fifty different suits by fifty several assignees, whose several interests might be affected, if a patent could be thus split up into numerous exclusive rights, or submonopolies. Whether the deed confers on Carter and his assigns more than a special license, or what remedy a court of equity might be disposed to extend to him, where his rights are infringed, it is not nec-

essary now to inquire. As it does not confer a legal title to the whole, or an undivided portion of the patent, nor grant "an exclusive right within a specified part of the United States," it cannot be received to affect this case. It was wholly irrelevant and ought not to have been received in evidence.

It adds to my confidence in the correctness of this view, that, as I have been informed, my Brother Nelson has ruled the question in the same way in the second circuit. New trial refused.

[NOTE. For other cases involving this patent, see note at end of Blanchard v. Reeves, Case No. 1,515. For opinion subsequently rendered on motion of plaintiff for attachment for disregarding an injunction, see Blanchard v. Eldridge, Id. 1,509.]